[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-11929
Non-Argument Calendar
_____

D.C. Docket No. 2:15-cr-00022-SPC-MRM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BASILIO AMAURY BRON, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(September 18, 2017)

Before HULL, WILSON, and ROSENBAUM, Circuit Judges.

PER CURIAM:

After a bench trial, Basilio Bron, Jr., appeals his conviction and 87-month

sentence of imprisonment for possessing a firearm as a convicted felon, in

violation of 18 U.S.C. § 922(g)(1).    On appeal, Bron challenges the constitutionality of his § 922(g) conviction and the sufficiency of the evidence to support it.    Bron also argues that the district court erred in concluding that his Florida felony battery conviction was a crime of violence for purposes of the Sentencing Guidelines.    After careful review, we affirm.

## I.

Bron first argues that the district court erred in refusing to dismiss the indictment on the ground that 18 U.S.C. § 922(g)(1) exceeds Congress's power under the Commerce Clause of the United States Constitution.    And based on his interpretation of what § 922(g)(1) requires, he maintains that the government failed to produce sufficient evidence to support his conviction.    Bron's arguments are foreclosed by circuit precedent.

Bron appears to concede that § 922(g)(1) is facially constitutional.    Indeed, "[w]e have repeatedly held that Section 922(g)(1) is not a facially unconstitutional exercise of Congress's power under the Commerce Clause because it contains an express jurisdictional requirement." *United States v. Jordan*, 635 F.3d 1181, 1189 (11th Cir. 2011); *see also United States v. Scott*, 263 F.3d 1270, 1273–74 (11th Cir. 2001); *United States v. McAllister*, 77 F.3d 387, 390 (11th Cir. 1996). Specifically, § 922(g)(1) makes it unlawful for a convicted felon to, among other

things, "possess *in or affecting commerce*, any firearm or ammunition."  18 U.S.C. § 922(g)(1) (emphasis added).

Instead, Bron maintains that § 922(g)(1), even if facially constitutional, cannot constitutionally be applied to purely intrastate possession of a firearm without a showing of a substantial effect on interstate commerce.  But we rejected this same argument in *McAllister* following the Supreme Court's decision in *United States v. Lopez*, 514 U.S. 549 (1995).  Specifically, we disagreed with a defendant's contention that *Lopez* rendered § 922(g)(1) "unconstitutional as applied to him because the government did not demonstrate how his purely intrastate possession affected interstate commerce."  *See McAllister*, 77 F.3d at 389–90.

We explained in *McAllister* that § 922(g) was "an attempt to regulate guns that have a connection to interstate commerce," in contrast to the statute at issue in *Lopez*, which was "not an essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated."  *Id.* at 390 (quoting *Lopez*, 514 U.S. at 561).  As a result, § 922(g) could be upheld, as the statute in *Lopez* could not, under case law upholding the regulation of activities connected to interstate commerce that, in the aggregate, substantially affect interstate commerce:  "When viewed in the aggregate, a law prohibiting the possession of a gun by a felon stems the flow of guns in interstate commerce to criminals."  *Id.*  And we found no basis to depart from the "minimal

nexus" requirement established by the Court in *Scarborough v. United States*, 431 U.S. 563, 575 (1977), for the predecessor statute to § 922(g).  *Id.*

In short, *McAllister* held that a defendant's § 922(g)(1) conviction is constitutionally valid so long as the firearm possessed has a "minimal nexus" to interstate commerce.  *Id.*   That interstate nexus requirement is satisfied by a showing that the gun previously "travel[]ed in interstate commerce."  *Id.*   No individualized showing of a "substantial" effect on interstate commerce is necessary.  *See id.*

No intervening Supreme Court decision has overruled or abrogated the holding of *McAllister*.  *See United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008) (stating that the holding of a prior panel is binding "unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or this court sitting *en banc*").  Bron cites the Supreme Court's decision in *United States v. Morrison*, 529 U.S. 598 (2000), but we have rejected the argument that *Morrison* abrogated *McAllister*.  *Scott*, 263 F.3d at 1273; *United States v. Dupree*, 258 F.3d 1258, 1259–60 (11th Cir. 2001).  In *Scott*, we "reaffirm[ed] *McAllister*'s holding that as long as the weapon in question has a 'minimal nexus' to interstate commerce, § 922(g)(1) is constitutional."  263 F.3d at 1274; *see also Jordan*, 635 F.3d at 1189–90 (noting, in 2011, that *McAllister* and *Scott* "have not been overruled by the *en banc* Court or by the Supreme Court").

4

Bron also relies on the Supreme Court's decision in *National Federation of Independent Business v. Sebelius*, 567 U.S. 519 (2012), but *Sebelius* did not overrule or abrogate the holdings of *McAllister* and *Scott*.  *Sebelius* involved, in relevant part, a challenge to the "individual mandate" portion of the Patient Protection and Affordable Care Act, Pub. L. No. 111–148, 124 Stat. 119 (2010). *See Sebelius*, 567 U.S. at 547–58.  *Sebelius* did not address the constitutionality of § 922(g), nor did it express an intention to overrule the precedents on which our cases relied in finding § 922(g) constitutional as applied to conduct like Bron's. As a result, *Sebelius* is not "clearly on point" for purposes of the prior-precedent rule.  *See United States v. Kaley*, 579 F.3d 1246, 1255 (11th Cir. 2009).

And we have since confirmed, in the context of a similar challenge to the application of § 18 U.S.C. § 2251(a) to purely intrastate production of child pornography, that "the Supreme Court in *Sebelius* said nothing to abrogate its holding in [*Gonzales v. Raich*, 545 U.S. 1 (2006)] to the effect that Congress has the power, as part of a comprehensive regulation of economic activity, to regulate purely local activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce."  *United States v. Parton*, 749 F.3d 1329, 1331 (11th Cir. 2014).  As we have explained, *McAllister* upheld the application of § 922(g)(1) to purely intrastate possession of a firearm under this same rationale.  *McAllister*, 77 F.3d at 390 ("When viewed in the aggregate, a law

5

prohibiting the possession of a gun by a felon stems the flow of guns in interstate commerce to criminals."); *see Raich*, 545 U.S. at 26 ("Prohibiting the intrastate possession or manufacture of an article of commerce is a rational (and commonly utilized) means of regulating commerce in that product."). Accordingly, *Sebelius* did not overrule or abrogate *McAllister* or *Scott*.

In sum, Bron's appeal is governed by the well-established rules set forth in *McAllister*, *Scott*, and *Jordan*. As a result, his § 922(g)(1) conviction is constitutional and supported by sufficient evidence because the government proved that he was a convicted felon who possessed a firearm that had been manufactured outside of the state. That the firearm traveled in interstate commerce was sufficient to satisfy the required "minimal nexus" to interstate commerce. Accordingly, we affirm his conviction.

## II.

Bron argues that the district court erred in classifying his prior conviction for felony battery under Fla. Stat. § 784.041 as a "crime of violence" for purposes of § 2K2.1(a)(2) of the Sentencing Guidelines. We review *de novo* whether a prior conviction qualifies as a conviction for a crime of violence. *United States v. Estrella*, 758 F.3d 1239, 1244 (11th Cir. 2014).

Section 2K2.1 sets out several alternative base offense levels for offenses involving unlawful possession of a firearm. Under § 2K2.1(a)(2), an enhanced

6

base offense level of 24 applies "if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 2K2.1(a)(2). A "crime of violence" for purposes of this section meant, at the time of Bron's sentencing, a felony offense that either (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another means," or (2) "is burglary of a dwelling, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another.*" U.S.S.G. § 4B1.2(a) (2015); *see* U.S.S.G. § 2K2.1 cmt. n.1 (incorporating § 4B1.2(a)'s definition of "crime of violence") (emphasis added). The final clause of § 4B1.2(a)(2), italicized above, is often referred to as the "residual clause" definition. *See United States v. Matchett*, 802 F.3d 1185, 1193–94 (11th Cir. 2015). We refer to the definition in § 4B1.2(a)(1) as the "elements clause."

Bron offers three reasons why, in his view, the district court erred in applying § 2K2.1(a)(2). None is persuasive.

First, Bron argues that the crime-of-violence determination should have been based on the Florida aggravated-battery statute, Fla. Stat. § 784.045, rather than the felony-battery statute, Fla. Stat. § 784.041. Bron explains that he was originally arrested for and charged with aggravated battery, but he subsequently pled nolo

contendere to a reduced charge of felony battery. Despite his plea to that offense, he maintains that the facts of his conduct do not support his conviction.[1]

The district court properly based the crime-of-violence determination on the statute of conviction, felony battery, not the statute to which Bron's criminal conduct arguably best conforms. To determine whether a prior state conviction is a qualifying offense for sentencing-enhancement purposes, we typically "look no further than the statute and judgment of conviction." *United States v. Palomino Garcia*, 606 F.3d 1317, 1336 (11th Cir. 2010). In some circumstances we may look beyond those sources to a limited category of state documents, such as charging documents or a written plea agreement, but the inquiry is still tied to the statute of conviction. *See id.*

There is no dispute that Bron was convicted of felony battery under Fla. Stat. § 784.041. Accordingly, that is the statute that controls our analysis. Bron provides no support for his assertion that we can look at his underlying conduct and decide that he committed an offense different from the one of which he was convicted. *See Estella*, 758 F.3d at 1245 ("Whether, in fact, the person suffering under this particular conviction actually used, attempted to use, or threatened to use physical force against a person is quite irrelevant.") (internal quotation marks

---

[1] In specific, Bron maintains that he was arrested for and charged with a variant of aggravated battery that does not require the use of physical force: simple battery on a pregnant woman. *See United States v. Braun*, 801 F.3d 1301, 1305 (11th Cir. 2015). According to the presentence investigation report, Bron poked his pregnant sister in the forehead and chest and "slapped her on the side of her stomach." There "were no noticeable injuries."

omitted).    And he may not "collaterally attack in the sentencing proceeding convictions being used to enhance his sentence." *United States v. Jackson*, 57 F.3d 1012, 1018 (11th Cir. 1995).  Because the district court properly based the crime-of-violence determination on Florida felony battery, we need not consider the second issue Bron raises—whether the version of aggravated battery under which he claims to have been arrested and charged is a crime of violence.

We therefore address Bron's contention that Florida felony battery is not categorically a crime of violence for purposes of the Sentencing Guidelines.[2] Sitting *en banc*, we recently held that Florida felony battery is categorically a "crime of violence" under the elements clause definition of that term in the Sentencing Guidelines.  *United States v. Vail-Bailon*, ___ F.3d ___, 2017 WL 3667647, *11 (11th Cir. Aug. 25, 2017).  As a result, Bron's conviction for Florida felony battery now clearly qualifies as a crime of violence under the elements clause of § 4B1.2(a).  Accordingly, the district court properly used this conviction as a predicate to apply the enhanced base offense level under § 2K2.1(a)(2).  And

---

[2] Florida's felony battery statute provides,

(1) A person commits felony battery if he or she:
   (a) Actually and intentionally touches or strikes another person against the will of the other; and
   (b) Causes great bodily harm, permanent disability, or permanent disfigurement.

Fla. Stat. § 784.041(1).

9

because the conviction is a crime of violence under the elements clause, we need not consider whether it qualifies under the residual clause of § 4B1.2(a) also.[3]

For these reasons, we **AFFIRM** Bron's conviction and sentence.

---

[3] Bron argues that the residual clause is unconstitutionally vague, but after he filed his brief to this Court, the Supreme Court issued its decision in *Beckles v. United States*, 137 S. Ct. 886 (2017), which held that the residual clause in the career-offender guideline, U.S.S.G. § 4B1.2(a), is not void for vagueness.